## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 21 2019, 6:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael P. DeArmitt
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nathan Edward Brown, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | February 21, 2019 <br><br> Court of Appeals Case No. 18A-CR-2126 <br><br> Appeal from the Bartholomew Superior Court <br><br> The Honorable James D. Worton, Judge <br><br> Trial Court Cause No. 03D01-1708-F5-4523, 03D01-1503-F6-1465 |

**Altice, Judge.**

**Case Summary**

[1] Nathan E. Brown pled guilty to two counts of Level 6 felony battery on a public safety official and was sentenced to consecutive terms of two years, for a total sentence of four years executed. On appeal, Brown argues that the sentence imposed is inappropriate and that the trial court erred in calculating his credit time to be applied to his sentence.

[2] We affirm and remand with instructions.

## Facts & Procedural History

[3] Brown pled guilty to Level 6 felony theft under Cause No. 03D01-1503-F6-1465 (F6-1465), and on October 25, 2016, he was sentenced to eighteen months and ninety-four days, with eighteen months suspended to probation. At Brown's request, the trial court approved transfer of his probation to Florida, where Brown enrolled in an intensive outpatient treatment program in Palm Springs. Florida officials denied Brown's request for transfer, and per the Interstate Compact for Adult Offender Supervision, Brown was required to return to Indiana. Brown, however, remained in Florida.

[4] On January 18, 2017, the State filed a petition to revoke Brown's probation, alleging that Brown failed to report a change of address within twenty-four hours, failed to return to the State of Indiana per probation's request and per the Interstate Compact Rules, and failed to report to probation as directed. Brown was arrested in Florida and extradited back to Indiana on June 30, 2017.

[5] Within days of returning to Indiana, Brown violated jail rules. On July 5, 2017, he was cited for attempting to flood his jail cell and fleeing or physically resisting a staff member. Between July 31, 2017 and August 14, 2017, Brown received additional citations for jail rule violations, including multiple counts of disorderly conduct, intimidation, refusing to obey an order, interfering with a staff member in the performance of their duties, making unreasonable noise/disturbing the peace, fleeing or physically resisting a staff member, and lying.

[6] On August 14, 2017, Jail Commander John Martoccia observed via a video monitor Brown standing on the sink in his cell attempting to damage the sprinkler system. Commander Martoccia and Jail Officer Haley Holdreith went to Brown's cell and told him to sit down. After Brown complied, Commander Martoccia entered Brown's cell and spoke with Brown about his prior action of flooding his jail cell. Brown jumped up and lunged at Commander Martoccia and tried to hit him with his right hand but missed. Officer Holdreith then entered the cell with her taser in her left hand. Brown grabbed her hand and twisted her arm, trying to break her grip on the taser, and he used his body weight to slam her into the cell wall. Brown then threw another punch at Commander Martoccia, who moved his head such that Brown made contact only with the tip of his nose. Brown was forced to the ground and subdued.

[7] The following day, the State charged Brown under Cause No. 03D01-1708-F5-4523 (F5-4523) with Count I, disarming a police officer, a Level 5 felony; Counts II and III, battery against a public safety official, as Level 6 felonies;

Count IV, resisting law enforcement, a Class A misdemeanor; and Count V, attempted criminal mischief, a Class B misdemeanor. On June 19, 2018, Brown pled guilty pursuant to an open plea agreement to Counts II and III, and the State agreed to dismiss the remaining charges.

[8] On August 7, 2018, the trial court held a dispositional hearing for F6-1465 and a sentencing hearing for F5-4523. Brown admitted to his probation violations in F6-1465. The State informed the court as follows:

> Judge I would just note that he has by my calculations um served the entire 18 months after you take away the, there was 180 days of good time credit that was taken away um through 6 different rule violations um so I, State believes that there, he has over served that case by 40 days and those 40 days would go towards [the sentence to be imposed in F5-4523].

*Transcript Vol. I* at 23. Based on this, the court sentenced Brown to "time served" for his suspended sentence and terminated his probation as unsuccessful. *Id*.

[9] The court then conducted a sentencing hearing for F5-4523. At the conclusion of the hearing, the court found no mitigating circumstances and four aggravating circumstances, including: (1) Brown's history of criminal and delinquent behavior; (2) the fact that Brown had received the benefit of probation in the past and had petitions to revoke filed against him; (3) the fact that Brown had the opportunity for treatment outside of a penal facility; and (4) the fact that Brown exhibited poor pretrial behavior while incarcerated. The

court then sentenced Brown to consecutive two-year terms for the offenses to which he pled guilty. With regard to credit time, the court stated:

> Give him credit on I guess count 2 towards the 40 actual days of credit less the 20 days of good . . . that were taken away from him.

*Id*. at 34. Brown now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

### 1. Inappropriate Sentence

[10] The trial court sentenced Brown to the maximum aggregate term of four years. *See* Ind. Code § 35-50-1-2(c), (d) ("the total of the consecutive terms of imprisonment to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct may not exceed the following: (1) If the most serious crime for which the defendant is sentenced is a Level 6 felony, the total of the consecutive terms of imprisonment may not exceed four (4) years"). Brown argues that in light of the nature of the offense and his character, the imposition of the maximum sentence is inappropriate.

[11] This court has the constitutional authority to revise a sentence authorized by statute if, "after due consideration of the trial court's decision," we find that the sentence imposed is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B). The question under App. R. 7(B) is "not whether another sentence is more appropriate" but rather "whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d

265, 268 (Ind. Ct. App. 2008). The burden is on the defendant to persuade the appellate court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).

[12] With regard to the nature of the offense, Brown argues that the facts giving rise to his offenses are not particularly heinous or more aggravated than what is necessary to establish battery on a public safety official as defined by the legislature. Brown also asserts that his physical contact with Commander Martoccia was minimal and that neither Commander Martoccia nor Officer Holdreith were injured as a result of his actions.

[13] Brown, however, ignores the setting in which the events occurred. Indeed, Brown was in jail, where "safety and order are paramount concerns." *Volkman v. Ryker*, 736 F.3d 1084, 1092 (7th Cir. 2013). We note that Brown had been cited for several jail rule violations in the weeks prior to the incident at issue and had previously tried to flood his jail cell. It was Brown's tampering with the sprinkler system that brought the officers to his cell prior to the altercation. When confronted, Brown lunged at Commander Martoccia and threw two punches at him—missing on his first attempt and making slight contact with Commander Martoccia's nose on his second attempt because Commander Martoccia was able to move to avoid being hit more seriously. Brown also tried to disarm Officer Holdreith and used his body weight to slam her into the cell wall.

[14] With regard to the character of the offender, Brown does not deny his criminal history or his many violations of jail rules. Rather, he points to his statement at sentencing in which he acknowledged the need to change his behavior and expressed his desire for treatment. Brown also notes that he accepted responsibility for his crimes by pleading guilty and offering no excuses for his behavior.

[15] The State asserts that a defendant's life and conduct are illustrative of his character. We agree. Here, Brown has accumulated multiple criminal convictions in both Indiana and Florida. As a juvenile, Brown was adjudicated a delinquent for criminal mischief and criminal recklessness. In total, he received seven juvenile delinquency adjudications between 2007 and 2009. Brown also has two prior felony convictions in Indiana—one for Class D felony intimidation and one for Level 6 felony theft—and several misdemeanor convictions. In 2015, Brown was charged in Florida with battery of an officer and two counts of obstruction of an officer without violence.

[16] In addition to his criminal history, we note that almost immediately from the time Brown was extradited to Indiana, he began violating jail rules. During July and August 2017, Brown attempted to flood his jail cell multiple times, tried to flee from officers, and lied to jail staff. After he was transferred to the Department of Correction awaiting trial in this case, Brown participated in a fight. Brown's criminal history and history of jail rule violations evidence his poor character and demonstrate his unwillingness to abide by rules of society or

the rules of the facility where he is confined. Brown's character is not deserving of a lesser sentence.

[17] Having considered the nature of the offense and the character of the offender, we cannot say that Brown's four-year aggregate sentence is inappropriate.

## 2. Credit Time

[18] Brown argues, and the State agrees, that the trial court's abstract of judgment contains an error regarding Brown's credit time. The trial court's sentencing order states:

> [Brown] had 402 actual days credit from (6/30/2017 –
> 8/6/2018). The defendant lost 180 actual days of good time
> credit in [F6-1465] for Jail Rule Violations filed on (7/5/2015;
> 7/31/2017; 8/1/2018 [sic]; 8/9/2017; 8/14/2017; and
> 8/17/2017), which left 222 actual days credit. 182 actual days
> credit was applied to [F6-1465] which was applied to the
> sentence in that case, for time served in full. The remaining 40
> days, minus 20 days for a jail rule violation on June 19, 2018 has
> been applied to cause number [F5-4523].

*Appellant's Appendix Vol. 2* at 214. The abstract of judgment, however, indicates that Brown earned twenty days of accrued time and twenty days of good time credit. Based on the court's sentencing order, Brown should have been given credit for forty days of accrued time and twenty days of good time credit. There is thus a twenty-day discrepancy between the trial court's sentencing order and abstract of judgment with regard to the number of accrued days for which Brown's sentence in the instant case should be credited. We therefore remand

this case to the trial court with instructions to correct the discrepancy between the sentencing order and the abstract of judgment concerning credit for accrued time.

[19] Brown also claims that the trial court erred in calculating his accrued time by one day, claiming that he actually over served his sentence in F6-1465 by forty-one days. We note, however, that during the sentencing hearing, Brown's defense counsel told the court that "he should now have 40 actual days credit." *Transcript Vol. I* at 24. The State then argued that Brown's good time credit associated with the forty days should be reduced by twenty days due to a jail rule violation. Defense counsel did not dispute this. Instead, Brown agreed that he was entitled to credit for forty days accrued time. Thus, any error in the court's calculation of accrued days was invited by Brown. *See Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014) ("the 'doctrine of invited error is grounded in estoppel,' and forbids a party to 'take advantage of an error that [he] commits, invites, or which is the natural consequence of [his] own neglect or misconduct'").

[20] Judgment affirmed and remanded with instructions.

Najam, J. and Pyle, J., concur.